IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| YUSUF MUSTAFA, | ) |
| | ) |
| Plaintiff, | )  Case No. 2:11-cv-862-MEF |
| | )  (WO—Publish) |
| v. | ) |
| | ) |
| MARKET STREET MORTGAGE | ) |
| CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

Defendants Market Street Mortgage Corporation (Market Street), MGC Mortgage, Inc. (MGC), Dovenmuehle Mortgage, Inc. (Dovenmuehle), and LNV Corporation (LNV) removed this case to federal court from the Circuit Court of Montgomery County, Alabama.[1] (Doc. # 1.) In response, Plaintiff Yusuf Mustafa filed the Motion to Remand (Doc. #6) now before the Court. For the reasons discussed below, Mustafa's motion is due to be GRANTED.

**II. BACKGROUND**[2]

Yusuf Mustafa and his late wife bought a home like most people do: by executing

---

[1] Although Market Street has yet to appear in the case, it did join in and consent to the removal. (*See* Doc. # 1-5.)

[2] The Court has taken the facts from the complaint and accepts them as true for present purposes.

1

a promissory note and granting a mortgage on the home to secure their repayment obligation. Market Street, the initial mortgagee, transferred its rights to repayment on the note to MGC shortly after informing Mustafa about its intent to do so. MGC then took over for Market Street, telling Mustafa that the conditions on the mortgage would stay the same except for the terms related to the loan's servicing. Mustafa then began making mortgage payments to MGC.

The mortgagor-mortgagee relationship between Mustafa and MGC fell apart at this point. Mustafa claims that MGC, acting at the direction of LNV, the mortgage note holder, failed to give him credit for payments made to Market Street; improperly held payments and miscalculated the amount owed to MGC; misapplied payments when it forced-placed insurance on the home, despite Mustafa having adequate insurance; charged Mustafa late fees for payments timely received; declared Mustafa in default; improperly initiated foreclosure proceedings; and misrepresented how the company would service Mustafa's loan. MGC then told Mustafa that Dovenmuehle would share in the right to repayment of the note with MGC, and that this new arrangement would not affect the terms of the mortgage except for those directly related to the loan's servicing.

Things did not improve at this point. According to Mustafa's complaint, all of the disputed practices continued, only now with Dovenmuehle taking part. Worse yet, Dovenmuehle and MGC told Mustafa to cure his delinquency by applying for assistance, but then turned around and refused Mustafa's request for help, stating that he had

2

submitted an incomplete application. The two mortgage companies still charged Mustafa application fees, however, and refused to consider participating in *Hardest Hit Alabama*, a state-sponsored foreclosure assistance program that would have allowed Mustafa to continue making payments.

As a result of these actions, Mustafa filed a complaint in the Circuit Court of Montgomery County, Alabama, asserting various state law claims related to the servicing of his mortgage loan. He joined the four mortgage companies discussed above—Market Street, MGC, Dovenmuehle, and LNV Corporation—as defendants. In his complaint, Mustafa alleged a smattering of state law claims, asserting liability theories based on misrepresentation, suppression, breach of contract, negligence, wantonness, negligent and wanton hiring and supervision, intentional infliction of emotional distress, trespass, defamation, conspiracy, and breach of a third-party contract. The defendants then removed the action, filing their removal papers on October 11, 2011.[3] Mustafa filed his remand motion about a month later on November 10, 2011.

### III. SHOULD THE ACTION BE REMANDED?

#### A. The remand standard

Federal courts are courts of limited jurisdiction. *See, e.g.*, *Kokkonen v. Guardian Life Ins. Co. Of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994); *Wymbs v. Republican State Executive Comm.*, 719 F.2d 1072,

---

[3] The parties do not dispute the procedural propriety of removal.

1076 (11th Cir. 1983). As a result, they only have the power to hear cases over which the Constitution or Congress has given them authority. *See Kokkonen*, 511 U.S. at 377. Congress has empowered the federal courts to hear a case removed by a defendant from state to federal court if the plaintiff could have brought the claims in federal court originally. *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). To accomplish a successful removal, the removing defendant bears the burden of showing that a district court has subject matter jurisdiction over an action. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996) (putting the burden of establishing federal jurisdiction on the defendant seeking removal to federal court). And although the Eleventh Circuit favors remand where federal jurisdiction is not absolutely clear, *see Burns*, 31 F.3d at 1095, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).

### B. The removal statutes

The removal statute, 28 U.S.C. § 1441(a), allows a defendant to remove an action from state to federal court if the plaintiff could have originally brought his claim in federal court. For this Court to exercise removal jurisdiction based on diversity, there must exist "complete diversity" between adverse parties—no plaintiff may share state citizenship with any of the defendants.[4] *See Riley v. Merrill Lynch, Pierce, Fenner &*

---

[4] The parties do not dispute the complete diversity requirement and instead focus solely on the amount in controversy. Even so, the Court notes the plaintiff resides in Alabama whereas MGC and LNV

4

*Smith, Inc.*, 292 F.3d 1334, 1337 (11th Cir. 2002). In addition, the amount in controversy must exceed $75,000, exclusive of interests and costs. 28 U.S.C. § 1332(a); *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). Where the plaintiff has not specified his claimed damages, the removing defendant has to show, by a preponderance of the evidence, that the action exceeds the $75,000 requirement. *See, e.g.*, *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). To make this determination, district courts can make "reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings." *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1066 (11th Cir. 2010).

### C. Analysis

The defendants believe that the value of Mustafa's home, $233,600, serves as the basis for determining the amount in controversy. And to establish convincingly that they have met the requirement, they note that Mustafa's mental anguish and punitive damages claims would surely push the amount in controversy past $75,000. Mustafa disputes this of course, contending instead that his lawsuit only revolves around the improper fees allegedly charged by the defendants. To this end, he points out that he does not dispute the mortgage's validity, nor does he seek an injunction to stop foreclosure. And he notes the speculative nature of any mental anguish or punitive damages that might attend an

---

are citizens of Texas (both were incorporated and have their principal place of business there), Dovenmuehle is a citizen of Delaware (state of incorporation) and Illinois (principal place of business), and Market Street Mortgage is a citizen of Florida (state of incorporation and principal place of business). The parties therefore satisfy the complete diversity requirement.

award based on the allegedly improper fees.

Mustafa has the better of this argument considering how judges in this district have addressed the amount-in-controversy requirement in mortgage foreclosure cases. For example, in *White v. Wells Fargo Home Mortgage*, Judge Thompson reasoned that, because the plaintiff based his state law claims on allegedly improper fees, declined to seek injunctive relief, and never questioned the mortgage's validity, he did not put the value of the home in controversy. No. 1:11-cv-408, 2011 WL 3666613, at *3 (M.D. Ala. Aug. 22, 2011). Judge Albritton recently adopted this line of reasoning, holding that plaintiffs who neither sought injunctive relief nor questioned the validity of their mortgage had not put the total value of their home at issue. *Parks v. Countrywide Home Loans*, No. 2:11-cv-852, 2011 WL 6223049 (M.D. Ala. Dec. 15, 2011).

Like the plaintiffs in *White* and *Parks*, Mustafa has refrained from putting the total value of his home in controversy: he neither seeks injunctive relief nor does he question the validity of his mortgage. Accordingly, the defendants' attempt to use $233,600 as the amount in controversy fails as a matter of law. Indeed, the principal case they cite used the plaintiff's home's value to determine the amount in controversy on a request for injunctive relief. *See Mapp v. Deutsche Bank Nat'l Trust Co.*, No. 3:08-cv-695, 2009 WL 3664118 (M.D. Ala. Oct. 28, 2009) (Watkins, J.) ("As the parties are aware, *when declaratory or injunctive relief is sought*, "it is well established that the amount in controversy is measured by the value of the object of the litigation." (citing *Ericsson GE*

6

*Mobile Commc'ns, Inc. v. Motorola Commc'ns & Elecs., Inc.*, 120 F.3d 216, 218 (11th Cir. 1997) (emphasis added) (internal citations omitted))).

The defendants alternatively argue that the disputed mortgage arrearage, combined with Mustafa's claimed mental anguish and punitive damages, satifies the $75,000 amount-in-controversy requirement. But even if the Court takes the amount needed to pay off the loan ($246,361.35), and subtracts it from the unpaid principal ($226,917.02), the defendants can only establish $19,444.33 in liquidated damages. And although Mustafa's mental anguish and punitive damages claims count towards the amount-in-controversy calculation, *see, e.g.*, *Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 240 (1943), the Court has no way to make a non-speculative estimate as to their value.

Yet the defendants ask the Court to apply a multiplier to the $19,444.33 worth of compensatory damages so as to capture the value of Mustafa's mental anguish and punitive damages claims. For support they cite *Blackwell v. Great American Financial Resources, Inc.*, a case finding the $75,000 requirement satisfied even though the plaintiff only sought $23,172.28 in compensatory damages. 620 F. Supp. 2d 1289 (N.D. Ala. 2009). In finding it had subject matter jurisdiction, the *Blackwell* court reasoned that a single digit multiple of the punitive damages claim would satisfy the amount-in-controversy requirement while still comporting with the Due Process Clause. *Id.* at 1291 (citing *State Farm Mut. Auto. Ins. v. Campbell*, 538 U.S. 408 (2003) (suggesting punitive

7

damages award that exceeds a single digit multiple of compensatory damages violates due process)).

This Court finds *Blackwell* unpersuasive, however, for it fails to put the burden of proof on the removing party, ignores established precedent, and undermines the foundational principal that a federal court should construe its removal jurisdictional narrowly. First, applying a single digit multiplier sufficiently high to satisfy the amount-in-controversy requirement, without more, assumes away the removing party's burden to prove the propriety of removal by a preponderance of the evidence. Second, it also ignores the Eleventh Circuit's command in *Lowery v. Alabama Power Company* to look at the facts supporting a damages assertion, because "the existence of jurisdiction should not be divined by looking to the stars." 483 F.3d 1184 (11th Cir. 2007). Woodenly applying a single digit multiple of the compensatory damages claimed, without a non-speculative reason to believe the jury would come back with such an award, violates *Lowery*'s explicit commands and is not a reasonable extrapolation from the pleadings under *Roe*. Third, assuming a punitive damages award of up to nine times compensatory damages (likely the highest multiplier that comports with due process) ignores the principal that courts should construe the remand statutes narrowly so as to resolve jurisdictional uncertainties in favor of remand. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Furthermore, using a multiplier, without more, would trigger grave federalism concerns: cases with compensatory damages of just $8,333.33 could

begin finding their way into federal court, thus usurping the States' jurisdiction over all but the smallest claims.

Still, the defendants attempt to overcome the speculative nature of the value of Mustafa's mental anguish and punitive damages claims by citing to damages awards exceeding $75,000 in somewhat similar cases. But doing so does not suffice: the "mere citation of what has happened in the past does nothing to overcome the indeterminate and speculative nature of" the defendants' assertions. *See Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 809 (11th Cir. 2003). The defendants have presented no evidence other than these cases to prove the monetary value of the mental anguish and punitive damages claimed. Therefore, the Court concludes that the defendants have failed to meet their burden to establish that the amount in controversy exceeds $75,000. Accordingly, the case is due to be remanded back to state court.

## IV. CONCLUSION

The case is hereby REMANDED to the Circuit Court of Montgomery County, Alabama, and the Clerk is DIRECTED to take appropriate steps to effect the remand. The pending motion to dismiss filed by Dovenmuehle Mortgage (Doc. # 5) is left for resolution by the state court.

DONE this the 12th day of January, 2012.

/s/ Mark E. Fuller
UNITED STATES DISTRICT JUDGE